UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8-19-16
```

---

JEFFERIES LEVERAGED CREDIT
PRODUCTS, LLC,

                              Plaintiff,

              v.

STRATEGIC CAPITAL RESOURCES,
INC.,

                              Defendant.

---

14-cv-1735

**OPINION**

Plaintiff Jefferies Leveraged Credit Products, LLC, brings this action against defendant Strategic Capital Resources, Inc., for breach of contract in a dispute over funds currently held in an escrow account. Defendant, in turn, asserts counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and reformation. Before the court is plaintiff's motion for summary judgment. For the reasons detailed below, plaintiff's motion is granted in part and denied in part.

1

**Facts**

In 2004, defendant entered into a real estate agreement with non-party Tousa Homes, Inc. (the "Debtor") relating to a development project in Las Vegas, Nevada.  In 2008, the Debtor, along with the Debtor's parent company, Tousa, Inc., filed for bankruptcy.  Defendant filed multiple claims against the Debtor and its parent company in the bankruptcy proceeding.  Specifically, in April 2008, defendant filed a claim—designated as Claim No. 1159—against the Debtor relating to the agreement for the Las Vegas project in the face amount of $20,607,443.58 (hereinafter, the "Claim").

To secure liquidity and a more certain distribution, defendant sought to sell some of its claims against the Debtor.

On March 25, 2010, plaintiff agreed to purchase the Claim from defendant.  The "Purchase Price" was defined in the documents as $2,510,192.88.  Plaintiff immediately remitted 75 percent of the purchase price, or $1,882,644.66, to defendant.  Of course, there was a remaining amount of $627,548.22.  There are issues in the case about under what circumstances this was to be paid.  In a complex agreement, the $627,548.22 was tied to the Claim in the bankruptcy court, described earlier in this opinion.  That Claim was in the face amount of $20,607,443.58.  However, as is well known, a claim in bankruptcy usually does not yield 100 percent of the claim.  What was agreed to in the present case was that the $627,548.22 was put into escrow and

would be paid to defendant if the Claim in the bankruptcy court was allowed in an amount equal to or greater than $16,734,619.21.

As it turned out, the Claim was allowed for *less* than $16,734,619.21. This will be described in more detail later in the opinion. The parties disagree as to what was intended for the $627,548.22 if the Claim was allowed in an amount *less* than $16,734,619.21. According to plaintiff, if the Claim were allowed for less than $16,734,619.21, then some portion of the $627,548.22 would be returned to plaintiff. According to defendant, even if the Claim were allowed for less than $16,734,619.21, defendant would still receive the $627,548.22.

During the summer and fall of 2010, plaintiff engaged the Debtor in negotiations over the allowed amount of the Claim. In September 2010, the Debtor's financial advisor provided plaintiff with a reconciliation of the Claim, asserting that the Claim should be allowed for the reduced amount of $15,034,082.62. Plaintiff promptly advised defendant of the Debtor's position, and defendant, in turn, provided plaintiff with documentation to rebut the Debtor.

On March 14, 2011, Glen Tulk, a former employee of the Debtor whom the Debtor had hired as a consultant to assist in reviewing claims in the bankruptcy proceedings, filed an affidavit in the bankruptcy proceedings stating that the amount of the claim submitted by defendant was valid.

3

In July 2011, plaintiff agreed to release $300,000 of the escrowed funds to defendant. Defendant agreed to return the $300,000 if the Claim were allowed for less than $15,034,082.62 (the figure listed in the Debtor's September 2010 reconciliation).

In 2013, plaintiff restarted negotiations to settle the Claim amount. Trustee's counsel, however, continued to assert that the Claim should be allowed for $15,034,082.62. When plaintiff provided the Tulk affidavit to trustee's counsel, trustee's counsel stated that he "ascribed zero value to" the affidavit.

On December 13, 2013, plaintiff entered into a stipulation which settled the allowed amount of the Claim for $15,034,082.62.

On January 23, 2014, plaintiff emailed defendant the stipulation and asked that, because the Claim had been allowed for less than $16,734,619.21, the escrowed funds be released to plaintiff. Defendant responded that the Claim should have been allowed for its filed amount and that defendant was thus entitled to the escrowed funds.

On March 13, 2014, plaintiff filed its complaint against defendant in this action. On April 18, 2014, defendant filed its answer and counterclaims.

On September 18, 2015, plaintiff filed its motion for summary judgment on its claim and defendant's counterclaims. The motion is currently pending before the court.

**Legal Standard**

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona College,* 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the court is "'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).

**Discussion**

Plaintiff has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on its claim of breach of contract and on all of defendant's counterclaims. Both the Assignment of Claim and the

Escrow Agreement state that they are governed by Florida law, and the parties agree that Florida law applies.

## I.      Summary Judgment Is Denied With Respect To Plaintiff's Claim and Defendant's Counterclaim of Breach of Contract.

Plaintiff claims that defendant breached the relevant agreements when it refused to release the escrowed funds to plaintiff.  Defendant, in turn, claims that plaintiff breached the agreements when it refused to release the remainder of the escrowed funds to defendant.

Plaintiff's entire argument is based on the Escrow Agreement, and, in particular, on one recital that states:

> WHEREAS, [plaintiff] and [defendant] agreed to escrow SIX HUNDRED TWENTY SEVEN THOUSAND, FIVE HUNDRED FORTY EIGHT DOLLARS AND TWENTY TWO CENTS and EIGHTY-SIX CENTS ($627,548.22) (the "Escrowed Funds") to be released to [defendant] at such time as the parties to this escrow agreement mutually agree but no later than the date the Claim is allowed in an amount equal or greater than $16,734,619.21.

Escrow Agreement, Koosed Decl. Ex. 15.

The problem for plaintiff is nowhere does the recital clause provide for the release of any funds if the Claim were allowed for *less* than $16,734,619.21, as was the eventual case here.  The recital in the Escrow Agreement only states that if the Claim were allowed for *equal to or greater* than $16,734,619.21, the funds in escrow were to be released to defendant.  Plaintiff's argument is that the Escrow Agreement, by

implication, intended for the funds to be released to plaintiff if the Claim were allowed for less than $16,734,619.21.

Plaintiff admits that this omission is a "latent ambiguity" under Florida law, but asks the court to resolve the ambiguity on summary judgment by looking to extrinsic evidence. *See* Pl.'s Br. at 20. However, the court is not at liberty to do so. "[W]hen an agreement contains a latent ambiguity . . . the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment." *Mac-Gray Services, Inc. v. Savannah Associates of Sarasota, LLC*, 915 So. 2d 657, 659–60 (Fla. Dist. Ct. App. 2005) (quoting *Griffin v. Federal Deposit Ins. Corp.*, 532 So. 2d 1358, 1360 (Fla. Dist. Ct. App. 1988)); *see GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Systems, Inc.*, 51 So. 3d 1243, 1245 (Fla. Dist. Ct. App. 2011). Summary judgment is therefore an inappropriate means of deciding which party is entitled to the funds in the escrow account. As such, the court denies plaintiff's motion for summary judgment as to its claim for breach of contract and defendant's counterclaim for breach of contract.

## II. Summary Judgment Is Granted With Respect To Defendant's Counterclaim of Breach of the Implied Covenant of Good Faith and Fair Dealing.

Defendant counterclaims that plaintiff "breached the implied covenant of good faith [and fair dealing] by unilaterally and without justification settling the Claim, which was fully supported and confirmed

at its face amount, for a discounted amount." Def.'s Counterclaims ¶ 28, Dkt. 9.

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1098 (Fla. Dist. Ct. App. 1999)). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id.*

Plaintiff, however, could not have breached the implied covenant of good faith and fair dealing when it settled the Claim for a discounted amount because it had no duty to act on the Claim—that is, no duty to negotiate and settle the Claim, nor any duty to litigate the Claim.

The Assignment of Claim provides:

> [Defendant] hereby irrevocably appoints [plaintiff] as its true and lawful agent and attorney-in-fact, solely with respect to the Claim, with the full power and authority to act in [defendant's] name, place, and stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim . . . . [Defendant] agrees that the powers granted by this paragraph are discretionary in nature and that [plaintiff] may exercise or decline to exercise such powers at [plaintiff's] sole option.  [Plaintiff] shall have no obligation to take any action to prove or defend

8

>the Claim's validity or amount in the
>[Bankruptcy] Proceedings.

Assignment of Claim, Koosed Decl. Ex. 14.

Thus, the Assignment of Claim gave plaintiff only the "power and authority" to act on the Claim.  Because plaintiff had only the *power*, as opposed to an *obligation*, to act on the Claim, it could not have breached the implied covenant of good faith and fair dealing.  *See Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247, 251 (Fla. Dist. Ct. App. 2009).

The *Meruelo* case is particularly instructive.   There, Meruelo bought real estate from The Mark Andrew in an agreement that included the following language: "In the event [Meruelo] is able to obtain approval to construct a total of 600,000 square feet or more of air conditioned saleable square feet of space, [Meruelo] will pay to [The Mark Andrew] an additional Five Million Dollars ($5,000,000.00)."  *Id.* at 249.  The Mark Andrew sued Meruelo and his assignee (together, the "Buyers") alleging that they had breached the implied duty of good faith and fair dealing by failing to seek approval of a site plan in excess of 600,000 square feet of air-conditioned saleable space.  *Id.*  The Mark Andrew obtained a jury verdict at trial and was awarded five million dollars in damages.  *Id.* at 250.

On appeal, however, the court reversed the jury's verdict, finding that the trial court erred in denying the Buyers' motion for a directed verdict.  *Id.*  The court wrote:

> [T]he contract . . . did not impose any duty on [the Buyers] to seek approval for a building of a certain size. . . . In short, the contract left the decision of whether to seek approval completely in the discretion of [the Buyers].
>
> Because the [contract] did not expressly impose on the Buyers a duty to seek approval for a 600,000 square foot building, there can be no implied duty to act in good faith in seeking such approval. . . . In other words, there is no express duty to which the implied duty of good faith can relate. If we were to impose a duty to seek approval, we would be stacking implication upon implication—first implying a duty to seek approval and then implying a duty to act in good faith in seeking that approval. The second implication is sanctioned by the law in this state; the first is not.

*Id.* at 251 (internal citations omitted).

Similarly, here, the agreements do not impose on plaintiff any duty to act on the Claim.  Thus, as in *Meruelo*, "there is no express duty to which the implied duty of good faith can relate."  *See id.*

Defendant cites to *Sepe v. City of Safety Harbor*, 761 So. 2d 1182 (Fla. Dist. Ct. App. 2000), for the proposition that the implied covenant of good faith and fair dealing applies here.  In *Sepe*, the contract stated that the City "shall vigorously pursue, at the City's sole cost and expense, the recovery of underpayments identified by the [audits], using all reasonable means, including legal action, if necessary."  *Sepe*, 761 So. 2d at 1183.

The contract also stated that "[i]f the City in its sole discretion determines that vigorous pursuit of such recovery of underpayments is not a justifiable expense, the City shall not pursue such action." *Id.* The court found that the implied covenant of good faith and fair dealing applied to the City's pursuit of the recovery of underpayments, despite the City having sole discretion over the decision to pursue such action. *Id.*

*Sepe* stands in contrast to the case at hand and cases like *Meruelo* because in *Sepe*, the contractual language placed an express obligation on the City. The first clause in the contract, by using the word "shall," obligated the City to "vigorously pursue, at the City's sole cost and expense, the recovery of underpayments." *Sepe*, 761 So. 2d at 1183. And although the second clause in the contract gave the City sole discretion over the decision to pursue such action, the first clause had created an express obligation to which the implied covenant attached.

This difference was noteworthy to the *Meruelo* court, which wrote that the implied covenant of good faith is "usually raised when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards. . . . This 'discretion' concept applies only where there is an express contractual duty or obligation over which one party has sole discretion." *Meruelo*, 12 So. 3d at 251 (citing *Sepe*, 761 So. 2d at 1183).

11

In sum, because the agreements here give plaintiff only the "power and authority" to act on the Claim as opposed to an obligation to act on the Claim, plaintiff could not have breached the implied covenant of good faith and fair dealing.

However, even if the implied covenant of good faith and fair dealing *did* apply, plaintiff would not have breached the covenant and would still be entitled to summary judgment on defendant's counterclaim.  *Sepe* lays out the relevant standard: where a party is granted sole discretion, it is "unlikely" that there exists a violation of the covenant of good faith "[u]nless no reasonable party in [its] position . . . would have made the same discretionary decision [it] made." *Sepe*, 761 So. 2d at 1185.

Here, although the terms of the agreements did not create an obligation to do so, plaintiff, took steps to negotiate and settle the Claim. After the Debtor's financial advisor provided plaintiff with a reconciliation of the Claim in September 2010, asserting that the Claim should be allowed for the reduced amount of $15,034,082.62, plaintiff submitted documentation to rebut the Debtor.  Then, in 2013, when trustee's counsel asserted that the Claim should be allowed for $15,034,082.62, plaintiff provided the Tulk affidavit to trustee's counsel to demonstrate that the Claim should be allowed for its filed amount of $20,607,443.58. It was only after trustee's counsel made clear that he "ascribed zero value to" the Tulk affidavit that plaintiff agreed to settle the Claim for the lower figure.

Plaintiff has overcome the very low threshold of showing that its decision to settle the Claim was not so inherently unreasonable that no reasonable party would have made the same decision.   Its actions, however minimal, are indicative of a good faith attempt to negotiate and settle the Claim for the filed amount of $20,607,443.58.   As such, plaintiff is entitled to summary judgment on defendant's counterclaim of breach of the covenant of good faith and fair dealing.

**III.   Summary Judgment Is Denied With Respect To Defendant's Counterclaim of Reformation.**

Defendant seeks to alter the language of the contract such that the "Purchase Amount" of the Claim in the Assignment Agreement be changed to $16,734,619.21 instead of $20,607,443.58.   Neither party dedicates much attention to this issue and the court is not prepared to decide it on the current record.   Plaintiff's motion for summary judgment is denied as to defendant's counterclaim for reformation.

## Conclusion

For the reasons provided above, plaintiff's motion for summary judgment is granted with respect to defendant's counterclaim for breach of the implied covenant of good faith and fair dealing. Plaintiff's motion for summary judgment is denied with respect to all other claims and counterclaims. This opinion resolves the motion numbered 43 on the docket.

SO ORDERED.

Dated:  New York, New York
        August 19, 2016

Thomas P. Griesa
U.S. District Judge

14